## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case 20-80637 |
| Daniel D. Mennenoh, | ) | |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | Judge Lynch |
| | ) | |
| H.B. Wilkinson Title Company, Inc. | ) | |
| and Gregory M. Kosin, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 20-96033 |
| | ) | |
| Daniel D. Mennenoh, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Daniel D. Mennenoh commenced his chapter 7 case on March 25, 2020. The deadline to object to discharge under section 727 or seek an exception to discharge under section 523(a)(2), (4), or (6), was July 13, 2020. On that date, H.B. Wilkinson Title Company, Inc. and Gregory M. Kosin ("Plaintiffs") filed this adversary complaint seeking a determination that certain debts were non-dischargeable pursuant to section 523(a)(4) based on numerous allegations of mismanagement and self-dealing while the Debtor was the president and 50% owner of H.B. Wilkinson and another related entity. The allegations in the adversary complaint were similar

to claims already brought against the Debtor in a lawsuit filed in Jo Daviess County (case no. 2019-L-1), an action which remains pending. Plaintiffs did not file an objection to discharge under section 727 or seek an extension of time to do so before the deadline expired. With no objection pending, the Debtor received his chapter 7 discharge on July 15, 2020.

More than 14 months after the deadline expired, Plaintiffs now move for leave to amend their complaint to add causes of action under section 727(a)(3). (ECF No. 28.) These additional counts are based on allegations that the Debtor deleted all of his email and shredded relevant documents immediately before his departure from H.B. Wilkinson. In support of their motion, Plaintiffs argue that the deadline for filing an objection to discharge under section 727 should be "equitably tolled" based on the Debtor's intentional destruction of emails and documents which, they assert, they were unaware of until approximately the first week of August 2021.

The Debtor opposes the motion by arguing that the additional counts proposed are untimely under Rule 4004 and that Plaintiffs, who had been in control of H.B. Wilkinson since the Debtor's departure in early April 2020, are not entitled to equitable tolling based on alleged lack of due diligence. Because the parties did not agree on all the relevant facts, the court held an evidentiary hearing on Plaintiffs' motion that was limited to the procedural issue of whether Plaintiffs could amend their complaint.

After careful consideration of the parties' briefs on the motion and the evidence presented at trial, the court will deny the motion to amend for the reasons stated

below. Plaintiffs additionally seek sanctions in the form of a default judgment against the Debtor pursuant to Federal Rule of Civil Procedure 37, based on his alleged destruction of emails and documents. That portion of the motion also will be denied without prejudice as the alleged conduct took place well before this adversary proceeding commenced. In light of the ruling on the motion to amend the adversary complaint, it appears at this time that any request for sanctions based on the alleged related discovery violation should instead be presented to the state court.

## BACKGROUND

The parties were given the opportunity to call witnesses and introduce exhibits relevant to the timing of Plaintiffs' request for leave to amend at the evidentiary hearing held on January 7, 2022. Plaintiffs called two witnesses. Angie Steele, an employee of H.B. Wilkinson, testified generally about the Debtor's conduct immediately prior to his departure, including the fact she witnessed him shredding documents in his office. Mr. Kosin, now the 100% shareholder of H.B. Wilkinson, testified, among other things, about the circumstances which led him to discover the missing emails and documents. The Debtor testified on his own behalf regarding his conduct. He denied any wrongdoing or destruction of corporate records. The Debtor also introduced three exhibits, which were received in evidence without objection, showing certain communications he had with Mr. Kosin and his attorney near the time of his departure. Although some of the testimony presented may have occasionally touched on the merits of the underlying dispute, for the most part the

parties properly stayed within the announced scope of the hearing, and the court will do the same for purposes of this ruling.

Plaintiffs' first witness, Ms. Steele, testified that she was working in the same office as the Debtor in the days leading up to his departure the first week of April 2020. During that time, she observed the Debtor shredding and disposing of papers over the course of several days. Steele commented on how it was unusual that the Debtor was using the smaller shredder in his office rather than the larger shredder on the main floor. She admitted, however, that she did not ask him why he was shredding documents and had no idea what documents he was shredding. She also indicated on cross-examination that she did not think it was important at the time to tell Mr. Kosin about the shredding.

Steele testified that it was not until August 2021, when Kosin was looking for some documents in conjunction with this adversary proceeding, that she remembered the earlier shredding and told him about it. After Kosin mentioned that he also could not find the Debtor's emails, Steele claims to have then remembered and advised Kosin that the Debtor had said he would delete all his emails and clean everything out before he left. She said she did not think it was odd at the time. Steele further testified that, during those one-and-a-half years between the Debtor's departure and when she told Kosin about the shredding, Kosin sometimes asked her for documents that she could not locate, but she thought she just could not find them because of the volume of papers that had been in the Debtor's office. Steele did not recall ever being asked to retrieve any emails. Although she did not know if Kosin had access to the

company's emails and other files, she stated that he was the president of the company and there was no reason to think he was locked out of the email and accounting systems.

Kosin testified that he had been a 50% owner of H.B. Wilkinson since 1996. After the Debtor filed his chapter 7 bankruptcy petition, Kosin became the company's 100% owner by purchasing the Debtor's interest in a sale approved by the court. Although he was at the H.B. Wilkinson office more frequently immediately following the Debtor's departure, he generally relies on his staff to run the day-to-day operations while he focuses on strategic oversight for the company. Kosin testified that he did not realize the Debtor's emails were missing and unrecoverable until July or August 2021 when he was looking for documents in response to discovery in this adversary proceeding. At that time, he asked Ms. Steele about the company's email policy, which is when she first informed him about the shredding of documents. Kosin admitted that he had no way of knowing the contents of the documents that were shredded, but he did indicate generally that there were some documents he would expect to see that could not be found. Later, on redirect, Kosin clarified that certain financial documents and entries in the accounting system were lacking and had to be meticulously recreated. But he could not say if those documents were disposed of or ever existed in the first place.

The Debtor then took the witness stand. Mr. Mennenoh explained that he had been working at H.B. Wilkinson since 1982 when his parents owned the company. He and Mr. Kosin purchased the company in 1996 and he became its president.

During his testimony, the Debtor described the lawsuit that Mr. Kosin had brought against him in state court.  The Debtor introduced without objection a letter from Kosin's attorney dated March 20, 2020, which indicated that the Debtor had complied with a discovery request in that case that required him to provide all of the financial records of the company. (Def.'s Ex. 1.)  The letter further mentioned that he had an ongoing duty to supplement discovery in that case, suggesting it would be "easier for everyone" if Kosin was provided with online access to the financial records. (*Id.*)  The Debtor's letter in response, dated March 25, 2020, was also received without objection.  In it, the Debtor stated  his willingness to "work together" to get Mr. Kosin remote access to the accounting software which would provide him with "a full backup copy of all records" and the "best and most comprehensive view of the company's financial picture." (Def.'s Ex. 2.)  The Debtor also submitted into evidence his letter of resignation, dated March 27, 2020, which also indicated his intention to "cooperate in a smooth transition of leadership in the companies." (Def.'s Ex. 3.)  According to the Debtor, he thought he had given sufficient information for Kosin and his attorney to access the accounting system, and that they never asked him for anything more.

With respect to the allegations of shredding documents, the Debtor testified that he spent some time cleaning up his office, which had 38 years of corporate documents and business records, vendor information, and training materials, as well as personal tax returns and other financial information.  The Debtor testified that he did not shred any of the corporate documents or business records, instead shredding only personal things that he did not want to move from his office to his house.  But

he admitted that he did not have a list of the documents that were shredded.  As for his emails, the Debtor testified that he tried to keep his email as "clean" as possible and would delete emails when they were no longer needed or move the email to a case file if it was still needed.  The Debtor did not dispute that he deleted all of the emails from both his inbox and sent messages before he left.  But he also explained that deleted emails were kept in the system for a rolling six-month period and could have been recovered during that time, but no one ever requested him to retrieve his email. The Debtor testified that he never actively concealed any document or email from Plaintiffs or their attorney.

## DISCUSSION

Rule 4004 provides that a complaint objecting to the debtor's discharge in a chapter 7 case "shall be filed no later than 60 days after the first date set for the meeting of creditors under § 341(a)." Fed. R. Bankr. P. 4004(a).  A creditor can move for an extension of that deadline, and "the court may for cause extend the time to object to discharge," but generally that motion must "be filed before the time has expired." Fed. R. Bankr. P. 4004(b)(1).  Aside from a limited exception not applicable here,[1] there is no basis in the Rules to seek an extension of time for filing an objection to discharge after the deadline has already passed. *See* Fed. R. Bankr. P. 9006(b)(3)

---

[1] Rule 4004(b)(2) provides that "[a] motion to extend the time to object to discharge may be filed after the time for objection has expired and before discharge is granted if (A) the objection is based on facts that, if learned after the discharge, would provide a basis for revocation under § 727(d) of the Code, and (B) the movant did not have knowledge of those facts in time to permit an objection." Fed. R. Bankr. P. 4004(b)(2).  That exception addresses a very specific situation in which a party could otherwise have been barred from challenging a discharge obtained through fraud due to the timing requirements of section 727(d)(1).  Even then, the motion for an extension of time still must be filed before the entry of discharge.

("The court may enlarge the time for taking action under Rules . . . 4004(a) . . . only to the extent and under the conditions stated in those rules.").

"[T]he filing deadlines prescribed in Bankruptcy Rules 4004 and 9006(b)(3) are claim-processing rules" that do not affect this court's subject-matter jurisdiction over an objection to discharge. *Kontrick v. Ryan*, 540 U.S. 443, 454 (2004); *see also* 28 U.S.C. § 157(b)(2)(J). Nevertheless, these rules serve three primary purposes:

> First, they inform the pleader, *i.e.*, the objecting creditor, of the time he has to file a complaint. Second, they instruct the court on the limits of its discretion to grant motions for complaint-filing-time enlargements. Third, they afford the debtor an affirmative defense to a complaint filed outside the Rules 4004(a) and (b) limits.

*Id.* at 456; *see also Opportunity Bank, N.A. v. Martinsen (In re Martinsen)*, 449 B.R. 917, 920 (Bankr. W.D. Wis. 2011) ("The purpose of the deadline for filing adversary complaints is to 'enhance the efficient administration of the estate' by requiring creditors to act quickly to contest discharge." (quoting *FDIC v. Meyer (In re Meyer)*, 120 F.3d 66, 68-69 (7th Cir.1997)).

There is no dispute that Plaintiffs did not object to the Debtor's discharge under section 727 within the 60-day time limit provided by Rule 4004(a). Although Plaintiffs have carefully styled their motion as one seeking leave to file an amended complaint under Rule 15, what they request in fact is the extension of the deadline to file their section 727(a)(3) claims. As noted above, however, a request to extend the time to object to discharge must be filed before the deadline passes. *See* Fed. R. Bankr. P. 4004(b)(1). That did not happen. "Deadlines may lead to unwelcome results, but they prompt parties to act and they produce finality." *Taylor v. Freeland*

*& Kronz*, 503 U.S. 638, 644 (1992) (discussing a similar deadline to file an objection

to a claim of exemption under Rule 4003); *see also* 9 Collier on Bankruptcy P 4004.02

(16th ed. 2022) ("In *Taylor v. Freeland & Kronz*, the Supreme Court made clear that

deadlines in the Federal Rules of Bankruptcy Procedure mean what they say and that

violations of such deadlines cannot be ignored or excused.").

Here, Plaintiffs missed their deadline. There is nothing in the Rules which

allows this court to ignore the timing requirements found in Rule 4004. Plaintiffs

instead ask the court to extend the deadline based on the doctrine of equitable tolling.

In support, Plaintiffs cite the Seventh Circuit's decision in *In re Kontrick*, 295 F.3d

724 (7th Cir. 2002), *aff'd sub nom. Kontrick v. Ryan*, 540 U.S. 443 (2004), as well as

a handful of bankruptcy court decisions which discuss *Kontrick*.

Although the phrase "equitable tolling" is mentioned once in the opinion as

part of a general proposition of law, *see id.* at 730 ("Statutory filing deadlines are

generally subject to the defenses of waiver, estoppel, and equitable tolling."), *Kontrick*

is not a case about the doctrine of equitable tolling. Rather, that decision addresses

"whether the time limit for filing objections to discharge contained in Federal Rule of

Bankruptcy Procedure 4004(a) is a jurisdictional prerequisite and, therefore, cannot

be waived." *Id.* On that question, the Seventh Circuit determined that "the timeliness

provisions at issue here are not jurisdictional" and that "an objection to the timeliness

of a complaint under Rule 4004(a) is subject to waiver." *Id.* at 733-34. While the Court

did indicate generally that "[t]hese rule provisions are subject to equitable defenses,"

it also cautioned that "those defenses must be applied in a manner consistent with

the manifest goals of Congress to resolve the matter of dischargeability promptly and definitively in order to ensure that the debtor receives a fresh start unobstructed by lingering doubts about the finality of the bankruptcy decree." *Id.* at 733. Thus, this court is not persuaded that *Kontrick* stands for the proposition that the deadline for filing a complaint under Rule 4004(a) can be extended at any time based on equitable tolling.

The Supreme Court's decision in *Kontrick* affirmed the Seventh Circuit's determination that Rule 4004 is not jurisdictional. *Kontrick v. Ryan*, 540 U.S. at 452. In doing so, the Court notes that "[t]his case . . . involves no issue of equitable tolling or any other equity-based exception," and "the sole question is whether Kontrick forfeited his right to assert the untimeliness of Ryan's amended complaint by failing to raise the issue until after that complaint was adjudicated on the merits." *Id.* at 457-58. The Court expressly declined to determine whether there were any other equitable exceptions to the time limits found in Rules 4004 and 9006(b)(3). *Id.* at 457 ("Whether the Rules, despite their strict limitations, could be softened on equitable grounds is therefore a question we do not reach." (footnote omitted)). *But see* 9 Collier on Bankruptcy P 4004.02 (16th ed. 2022) ("The Supreme Court expressly declined to rule on whether there could be equitable exceptions to the deadline. Lower courts have disagreed on this issue. The better view is that Rule 4004(b) provides the only circumstances in which the deadline can be extended.").

Nor do the bankruptcy court decisions Plaintiffs cite in their motion extend a deadline based on equitable tolling. *See In re Bartlemay*, No. 12-11900-RLM-7, 2013

WL 964026, at *2 (Bankr. S.D. Ind. Mar. 12, 2013) ("Even in the extreme unlikelihood

that *Kontrick* can be read as support for allowing the late filing of a motion to extend

the time to file a § 523 on equitable grounds, the equitable grounds are not present

here."); *Martinsen*, 449 B.R. at 924 ("A creditor who simply does not act quickly

enough to learn the facts is not entitled to a belated extension of the deadline, because

such an exception would quickly consume the rule. The purpose of the rule, after all,

is to compel creditors to move *swiftly*."); *Baermann v. Ryan (In re Ryan)*, 408 B.R.

143, 161 (Bankr. N.D. Ill. 2009) (finding no equitable basis for tolling the filing

deadline); *Cent. States, Se. & Sw. Areas Pension Fund v. Lopresti (In re Lopresti)*,

397 B.R. 62, 67 (Bankr. N.D. Ill. 2008) (same). As such, those decisions do not

persuade this court that equitable tolling should apply here, especially where the

discharge has already been entered. *See* 9 Collier on Bankruptcy P 4004.02 (16th ed.

2022) ("Once the discharge has been granted, if grounds for an objection have been

fraudulently concealed the remedy is to seek revocation of the discharge.").

The court recognizes that "nonjurisdictional limitations periods are

presumptively subject to equitable tolling." *Boechler, P.C. v. Comm'r of Internal*

*Revenue*, 596 U.S. ___, No. 20-1472, 2022 WL 1177496, at *5 (U.S. Apr. 21, 2022); *see*

*also Young v. United States*, 535 U.S. 43, 49 (2002) ("It is hornbook law that

limitations periods are customarily subject to equitable tolling, unless tolling would

be inconsistent with the text of the relevant statute." (citation and quotation marks

omitted)). That said, the court must be mindful of the need to be consistent with the

"strict limitations" found in Rules 4004 and 9006(b)(3), *see Kontrick*, 540 U.S. at 457,

and the "manifest goals of Congress to resolve the matter of dischargeability promptly and definitively," *Kontrick*, 295 F.3d at 733. Even if this court were to conclude that equitable tolling is available in some circumstances, Plaintiffs here fail to demonstrate facts that warrant that relief.

In general, "[a] deadline may be equitably tolled if the creditor can show that, despite the exercise of due diligence, it could not obtain the information necessary to realize that it may possibly have a claim." *Bartlemay*, 2013 WL 964026, at *3. "Equitable exceptions to the general application of Rules 4004(b) and 4007(c) must be construed strictly in favor of the debtor and consistent with the goal that dischargeability issues are resolved 'promptly and definitively.'" *Martinsen*, 449 B.R. at 924 (quoting *Kontrick*, 295 F.3d at 733). Because a creditor in a bankruptcy proceeding has "additional tools" available to help determine whether it has a claim, such as the ability to "request the authority to conduct an examination of the debtor" under Rule 2004 and the option to "move to extend the deadline if they have been unable to confirm that no claims exist," establishing an entitlement to equitable tolling is no easy task. *Id.; see also Brown & Brown, Inc. v. Ali*, No. 10 C 7195, 2011 WL 494373, at *1 (N.D. Ill. Feb. 7, 2011) (explaining that "[e]quitable tolling will rarely be available when a claimant can obtain an extension of time for complying with a deadline" and would require "a special kind of showing"). Put simply, "[c]reditors who know about the deadline and do not act to protect themselves cannot complain." *Martinsen*, 449 B.R. at 924.

Here, the deletion of emails and shredding of documents by the Debtor are alleged to have occurred before he left H.B. Wilkinson on April 7, 2020. Ms. Steele testified generally that she was aware of suspicious conduct at the time, more than three months before the Rule 4004(a) deadline. But she did not inform Mr. Kosin about it until August 2021, or more than a year after the deadline. Her testimony in this regard is consistent with Mr. Kosin's testimony about when he learned about the deleted emails and shredded documents. However, no testimony or other evidence was presented to show why, through the exercise of due diligence, Mr. Kosin could not have learned about the Debtor's conduct before the deadline passed. Instead, it appears that everything that Kosin did in August 2021, which consisted of looking for the Debtor's emails and talking with Steele, could have happened before July 2020.

At the evidentiary hearing, Plaintiffs did not demonstrate the type of due diligence that would support a claim of equitable tolling. There was no evidence of any steps that were taken at or around the time of the Debtor's departure to identify, locate and secure any necessary documents or emails that had been in the Debtor's possession. Plaintiffs failed to demonstrate that the Debtor interfered with Plaintiffs' due diligence before his departure or did anything after he left H.B. Wilkinson to conceal his conduct. Since early April 2020, Mr. Kosin has been in control of the company, and Plaintiffs fail to show that he was unable to review the Debtor's email or his physical files at that time. The fact that Kosin did not establish that he actively looked for any of the Debtor's emails or physical files for more than a year after the Debtor's departure is perplexing, to say the least, especially considering that during

this time he was seeking, among other things, greater access to corporate records. Thus, Plaintiffs' puzzling delay in taking even de minimis steps to obtain and secure the Debtor's emails or physical files fails to demonstrate the necessary due diligence for equitable tolling.

There are two additional issues which, although not raised in the initial motion, have arisen during these proceedings. The first issue involves Rule 15(c) which, in relevant part, provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out — or attempted to be set out — in the original pleading." Fed. R. Civ. P. 15(c) (made applicable by Fed. R. Bankr. P. 7015). Because Plaintiffs filed a timely complaint seeking relief under section 523, a later section 727 claim might be considered timely if it is closely related to the pending section 523 claims. That is not the case here, however, and Plaintiffs do not seriously contend otherwise. The allegations supporting the potential section 727 claim involve post-petition conduct that is unique and unrelated to the allegations in the current adversary complaint. Accordingly, Rule 15(c) does not provide a basis to allow Plaintiffs to add their proposed section 727 counts.

The court also asked the parties to address in their closing briefs the Seventh Circuit's decision in *Disch v. Rasmussen*, 417 F.3d 769 (7th Cir. 2005). In some respects, *Rasumussen* presents a similar procedural posture as the instant case—a creditor filed a timely adversary complaint raising claims under section 523, a discharge was entered, and then after the 60-day time limit had passed, the creditor

sought to also raise a section 727 objection to discharge. The bankruptcy court allowed the creditor to amend the pleadings under two alternative theories and then proceeded to deny the Debtor a discharge under section 727. First, "[r]elying on its equitable authority under 11 U.S.C. § 105(a), it found that revocation was necessary and authorized in this situation to prevent manifest injustice." *Id.* at 774. Second, the bankruptcy court "held in the alternative that it had authority to revoke the order of discharge under Bankruptcy Rule 9024, on the theory that the discharge resulted from the court's own mistake." *Id.*

On appeal, the Seventh Circuit noted that the "record from the adversary proceeding strongly supports the conclusion" that the Debtor was not entitled to a discharge under sections 727(a)(2), (a)(3), and (a)(5), and proceeded to address the procedural approach taken by the bankruptcy court. *Id.* at 775. The Court began by noting that the bankruptcy court was "well within its authority to permit the amendment" to add the section 727 claim under Rule 15(c), because the creditor's section 727 claim "arose from the same conduct, transactions and occurrences as his § 523 claim." *Id.* at 776. But as noted above, Plaintiffs in this case are not in a similar position to invoke Rule 15(c).

Next, the Seventh Circuit considered the bankruptcy court's reliance on section 105(a) in its ruling. The Court explained that "Bankruptcy Rule 4004 structures the way in which a claim under § 727(a) must be presented. If § 105(a) offered a way around the restrictions on filing § 727(a) claims found in Bankruptcy Rule 4004, then the rule might as well not exist." *Id.* at 778. In their post-trial brief, Plaintiffs

Page **15** of 17

misapprehend this holding to argue that "pursuant to *Disch* this Court also has the equitable authority under 11 USC 105(a) to allow Plaintiffs to amend their complaint to add in the cause of action under Section 727." (ECF No. 51 at 5-6.)  The Seventh Circuit concluded, in no uncertain terms, that "the revocation of Rasmussen's discharge exceeded the court's equitable powers under § 105(a)." *Rasmussen*, 417 F.3d at 778.

In *Rasmussen*, the Seventh Circuit did approve of the bankruptcy court's alternative holding and found that nothing in the Rules prevented the court from "setting aside an order of discharge under Bankruptcy Rule 9024 six months after its issuance." 417 F.3d at 778.  Here, Plaintiffs have not sought to vacate the discharge under Rule 9024, and it is not clear whether they could do so since their motion was filed more than one year after the discharge was granted. *See* Fed. R. Bankr. P. 9024 (providing that "a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code"); 11 U.S.C. § 727(e)(1) (providing that a request to revoke a discharge that was obtained through the fraud of the debtor must be made "within one year after such discharge is granted"). As the bankruptcy court observed in *In re Borczyk*, a "discharge order gives finality to the bankruptcy process," and allowing creditors to amend their pleadings more than a year after the discharge entered "would disrupt that finality." 458 B.R. 468, 473 (Bankr. N.D. Ill. 2011).

## CONCLUSION

For all the reasons stated above, Plaintiffs' motion for leave to file an amended complaint in order to add claims under section 727(a)(3) is denied. That request is untimely under Rule 4004, there is no basis to override the timing restrictions found therein on a theory of equitable tolling or through the use of section 105(a), the proposed amended complaint does not relate back to the timely section 523 complaint under Rule 15(c), and the court has not been presented with any persuasive argument to vacate the discharge order in order to reset the clock. The deadline for objecting to the Debtor's discharge under section 727 has long passed and there is nothing about the circumstances of this case which would allow the court to ignore the purpose of the relevant procedural rules and allow the amendment of the adversary complaint. Plaintiffs' separate request for sanctions against the Debtor pursuant to Rule 37 for alleged discovery violations is also denied without prejudice.

A separate order will be issued concurrent with this Memorandum Opinion giving effect to the determinations reached herein.

DATE: April 27, 2022

ENTER

Thomas M. Lynch
United States Bankruptcy Judge